IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BISHOP ANTHONEE J. PATTERSON, individually and on behalf of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith,<br><br>Petitioner,<br><br>v.<br><br>KENNETH SHELTON, et al.<br><br>Respondents. | MISCELLANEOUS ACTION<br>NO. 16-mc-168 |

## OPINION

Slomsky, J.                                                                                                                                         August 11, 2017

### I.    INTRODUCTION

      The instant action, filed on August 29, 2016, is the latest attempt by Petitioner Bishop Anthonee J. Patterson to seek confirmation of an Arbitration Award entered in his favor in 2006. The Award was vacated, however, as ordered by the Commonwealth Court of Pennsylvania and, as of this date, is not effective. But not to be deterred, Petitioner Patterson has filed the instant case, which is only the most recent stage in a decades-long dispute between these parties. The initial case was brought in state court in 1995, and subsequently endured a complicated procedural history, in both federal and state court.

      Before the Court is a Motion to Dismiss filed on October 19, 2016 by Respondents Bishop Kenneth Shelton, Leon Bligen, John Carlton Shelton Thomas, John R. Brown, Esquire, Anthony Lamb, James Brown, and Trustees of the General Assembly of the Church of the Lord

Jesus Christ of the Apostolic Faith, Inc.[1] (collectively "Respondents"). (Doc. No. 13.) Respondents filed the Motion pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). (Id.) On October 20, 2016, Petitioner filed a Response in Opposition.[2] (Doc. No. 20.) The Motion to Dismiss is now ripe for a decision.[3] For reasons that follow, the Motion will be granted.

## II. FACTUAL BACKGROUND

The current matter stems from previous litigation between the parties, with Petitioner seeking both state and federal courts to confirm the same vacated arbitration award entered in his favor on October 3, 2006. The twenty-two-year long litigation arose from a singular set of facts.

---

[1] The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. is the corporation that manages the Church's assets. (Doc. No. 1 at 1 n.1.) The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith is the nationwide Church congregation. (Id.)

[2] On October 20, 2016, Fincourt B. Shelton, Esquire, counsel for Petitioner, was suspended from the practice of law before this Court for a period of four years. (Doc. No. 10, Miscellaneous Action No. 16-mc-206.) In view of this suspension, a status conference was held on May 22, 2017. At the conference, Petitioner, proceeding pro se, stated that he adopts the Response to the Motion to Dismiss (Doc. No. 20) that Fincourt Shelton, Esquire, previously filed, and requested a decision based on the state of the record at that point. (Doc. No. 32 at 6:7-19.) At the status hearing, Petitioner was allotted sixty (60) days to decide whether to proceed pro se or to retain counsel. (Id. at 30:10-12.) On July 24, 2017, Petitioner informed the Court by letter that he would be proceeding pro se.

[3] In reaching a decision, the Court has considered the Petition to Confirm Arbitration Award (Doc. No. 1), Respondents' Joint Motion to Dismiss (Doc. No. 13), Petitioner's Response in Opposition (Doc. No. 20), Respondents' Reply (Doc. No. 21), Respondents' Memorandum of Law Concerning Corporate Status of the Parties (Doc. No. 30), Petitioner's Response to the Memorandum of Law Concerning Corporate Status of the Parties (Doc. No. 31), and pertinent records from previous court proceedings. "[A] court may take judicial notice of the record from a previous court proceeding between the parties." Conceiaco v. Nat'l Water Main Cleaning Co., 650 F. App'x 134, 135 (3d Cir. 2016) (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988)).

For over two decades, Petitioner Anthonee Patterson and Respondent Kenneth Shelton have been involved in litigation for control over the General Assembly of the Church of the Lord Jesus Christ and the Trustees of the General Assembly of the Lord Jesus Christ of the Apostolic Faith, Inc. ("the Trustees Corporation"). (Doc. No. 13-2 at 6.) Based on the organization of these two religious entities, whoever serves as a General Overseer/Bishop of the General Assembly of the Church, also serves as a President of the Board of Trustees. Patterson v. Shelton, No. 1967 C.D. 2006, 2008 WL 9401359, at *1 (Pa. Commw. Ct. Jan. 31, 2008). The person considered the rightful Bishop controls the General Assembly of the Church, the Trustee Corporation, and notably, the assets of these entities. Id. Since 1992, Kenneth Shelton has been in control of the General Assembly of the Church and of the Trustee Corporation. Id.

A timeline of the litigation of this matter in both state and federal court follows:

- In 1995, Petitioner Patterson filed a Complaint in the Pennsylvania Court of Common Pleas against Respondents Kenneth Shelton and Erik Shelton (the "1995 Action"). (Doc. No. 13-2 at 4.)

- On January 10, 2006, the claim remaining from the 1995 Action was referred to arbitration by an order of the Court of Common Pleas of Philadelphia County. (Doc. No. 13-11 at ¶ 1.)

- On April 26, 2006, the Honorable Edwin E. Naythons, a former United States Magistrate Judge, acting as a private arbitrator, entered the Arbitration Adjudication in favor of Petitioner Patterson. (Doc. Nos. 13-11 at ¶ 6; 20 at 6-9.) (See also Doc. Nos. 20-2, 20-3.) At the time, Judge Naythons was not acting in the capacity of a judge in the federal court.

- On May 8, 2006, Judge Naythons issued a Supplemental Adjudication in which he clarified findings in the previous Adjudication. (Doc. No. 20-4.)

- On May 16, 2006, Judge Naythons issued an Amendment to the Adjudication. (Doc. No. 20-5.)

- On July 10, 2006, the Court of Common Pleas denied Defendants Kenneth and Erik Shelton's petition to vacate and confirmed the Arbitration award in favor of Patterson. (Doc. No. 20-6.)

- On July 26, 2006, Defendant Shelton filed an appeal to the Superior Court of Pennsylvania. Patterson v. Shelton, No. 2945, 2012 WL 595833 (Pa. Commw. Ct. Jan. 25, 2012).

- On September 22, 2006, the appeal was transferred to the Commonwealth Court of Pennsylvania. Id.

- According to Petitioner Patterson, Judge Naythons issued another Adjudication on July 25, 2006. (Doc. No. 20 at 9.) (See also Doc. Nos. 20-8, 20-9.)

- On October 3, 2006, the Final Adjudication was issued which concluded the Arbitration in favor of Patterson. (Doc. No. 20 at 9.) (See also Doc. Nos. 20-8, 20-9.)

- On November 15, 2006, Anthonee J. Patterson filed an action in district court to confirm the same Arbitration award which was entered in his favor. (Doc. No. 1, Patterson v. Shelton, No. 06-5060 (E.D. Pa. Apr. 6, 2007).) The case was docketed under No. 2:06-cv-05060 and assigned to the Honorable Gene E.K. Pratter.

- On April 6, 2007, the then Chief Judge reassigned the case from Judge Pratter's calendar to the Honorable Anita B. Brody because a related case was in front of Judge Brody. (Doc. No. 43, Patterson, No. 06-5060.)

- On April 6, 2007, after a telephone conference with the parties, Judge Brody dismissed the case sua sponte for lack of "federal jurisdiction." (Doc. No. 44, Patterson, No. 06-5060 (Brody, J.).)

- On June 5, 2007, the then Chief Judge ordered the case to be reassigned from the calendar of Judge Brody to the calendar of the Honorable Mary A. McLaughlin for all further proceedings. The reason for the reassignment is not stated in the Order. (Doc. No. 63, Patterson, No. 06-5060.)

- In the spring of 2007, the various parties separately appealed Judge Brody's dismissal to the Court of Appeals for the Third Circuit. (See Doc. Nos. 47, 49, 51, 53, Patterson, No. 06-5060.)

- On January 31, 2008, the Commonwealth Court ruled that the arbitrator exceeded his authority and therefore reversed and remanded the case to the trial court with instructions to vacate the Arbitration Adjudications entered in favor of Patterson, and to proceed to trial. Patterson v. Shelton, No. 1967 C.D. 2006, 2008 WL 9401359, at *8.

- In an order dated November 28, 2009, the Court of Appeals for the Third Circuit affirmed the order of Judge Brody dismissing this case for "lack of diversity jurisdiction." (Doc. No. 69, Patterson, No. 06-5060.)

- The arbitration award was presumptively vacated by the Court of Common Pleas[4] (see Doc. No. 13-2 at 4), because on July 15, 2014, pursuant to the remand instructions, the Court of Common Pleas began a non-jury trial and then granted a motion to dismiss based on a lack of subject matter jurisdiction. Patterson v. Shelton, No. 2147 C.D. 2014, 2015 WL 9260536, at *4-7 (Pa. Commw. Ct. Dec. 18, 2015), appeal denied 138 A.3d 7 (Pa. 2016), petition for cert. denied 137 S.Ct. 297 (2016).

- On December 18, 2015, the Commonwealth Court affirmed the Court of Common Pleas decision. Id. at *8.

- On August 29, 2016, Petitioner Patterson filed the current matter in this District Court, docketed under No. 2:16-mc-00168 and assigned to the Honorable Joel H. Slomsky.

Petitioner once more seeks confirmation of the vacated Arbitration Award. (Doc. No. 1.) He argues that the parties are bound by the common law arbitration and the awards issued by the arbitrator. (Doc. No. 1 at 5.) Petitioner maintains that this Court has diversity of citizenship jurisdiction to hear this matter, despite the contradictory ruling from Judge Brody which was affirmed by the Third Circuit. (Id. at 3.) As noted previously, Respondents seek dismissal of the Petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 13.)

---

[4] The order entered by the Commonwealth Court states in relevant part as follows:

> This matter is remanded with instructions to vacate the arbitrator's April 26, 2006 award/decision and any decisions rendered by the arbitrator after that date and for the trial court to conduct the proper proceedings consistent with the foregoing opinion to determine whether Anthonee J. Patterson is entitled to relief pursuant to the Pennsylvania Nonprofit Corporation Law.

Patterson v. Shelton, No. 1967 C.D. 2006, 2008 WL 9401359, at *8 (emphasis added). The record does not contain the a specific order from the Court of Common Pleas vacating the arbitration award. However, presumably the Court of Common Pleas followed the instructions of the Commonwealth Court because the case proceeded to a bench trial on the remaining issue. See Patterson v. Shelton, No. 2147 C.D. 2014, 2015 WL 9260536, at *4-7 (Pa. Commw. Ct. Dec. 18, 2015), appeal denied 138 A.3d 7 (Pa. 2016), petition for cert. denied 137 S.Ct. 297 (2016). Additionally, both parties state in filings here that the arbitration award was vacated. (Doc. No. 1 at ¶ 18; Doc. No. 13-2 at 4.)

## III. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal of an action is warranted when a court lacks subject-matter jurisdiction over the case. Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss under Rule 12(b)(1), a court must determine whether the motion is a facial or factual challenge. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "A facial attack challenges only the court's subject matter jurisdiction. A factual attack allows the court to question the plaintiff's facts after the defendant files an answer." Machon v. Pa. Dep't of Pub. Welfare, 847 F. Supp. 2d 734, 743 (E.D. Pa. 2012) (citing Mortensen, 549 F.2d at 891). Here, no answer has been filed by Respondents. Therefore, the Rule 12(b)(1) Motion is necessarily a facial attack on the Court's subject matter jurisdiction.

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." In re Schering Plough Corp., 678 F.3d at 243 (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotations omitted)). As the party asserting jurisdiction, Petitioner bears the burden of showing that his claims are properly before the Court. Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995).

### B. Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to

6

defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 629 F.3d 121, 130 (3d Cir. 2010).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Phillips v. Cnty of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. ANALYSIS

In the Motion to Dismiss, Respondents make several arguments as to why Petitioner cannot maintain the present suit. Specifically, Respondents argue: (1) the Petition is untimely

under the Federal Arbitration Act ("FAA"), (2) the First Amendment precludes jurisdiction over the Petition, and (3) there is no arbitration award to enforce, and (4) the Court does not have diversity of citizenship jurisdiction. (Doc. No. 13-2 at 2.) The Court will address each argument.

### A. The Petition Is Untimely Under the Federal Arbitration Act

Respondents claim that the Petition filed by Patterson in this Court is untimely since the Federal Arbitration Act ("FAA") provides a one-year term for confirming an arbitration award.[5] (Doc. No. 13-2 at 19.) As a consequence, Respondents maintain that the Petitioner was bound to ask for the confirmation of the Award only during the one-year period after the Award was finally issued, at the latest in October 2006. (Id. at 19-20.) The instant action was filed on August 29, 2016, well beyond the one-year deadline.

Section 9 of the FAA provides in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

The Arbitration Award in question here was issued on April 26, 2006 (Doc. No. 20 at 7), and the Final Adjudication Award was issued on October 3, 2006 (Id. at 9). Petitioner first asked a federal court to confirm the arbitration award on November 15, 2006, when he filed the initial federal action in this court. (Doc. No. 1, Patterson v. Shelton, No. 06-5060 (E.D. Pa. Apr. 6, 2007).) The case was dismissed on April 6, 2007. (Doc. No. 44, Patterson, No. 06-5060 (Brody,

---

[5] The Federal Arbitration Act (Pub. L. 68-401, 43 Stat. 883, enacted February 12, 1925, codified at 9 U.S.C. § 1, et seq.) is an act of Congress that provides for judicial facilitation of private dispute resolution through arbitration.

8

J.).) The dismissal was appealed, and the Third Circuit affirmed the dismissal in an order dated November 28, 2009. (Doc. No. 69, Patterson, No. 06-5060.) On August 29, 2016, over seven years later, Petitioner once again filed an action seeking to have the award confirmed in federal court. (Doc. No. 1.) This date is beyond the one-year statute of limitations, thus his claim is untimely under the FAA.

**B. The First Amendment Bars This Court From Hearing the Claim**

In their Motion to Dismiss, the Respondents argue that the Petition is barred by the Church Autonomy Doctrine under the First Amendment. (Doc. No. 13-2 at 6.) The Court agrees. Even if Petitioner had established diversity of citizenship jurisdiction, this case cannot be adjudicated by applying neutral principles of law without interfering in Church business and the distribution of its assets.

The Free Exercise Clause of the First Amendment protects "not only the individual's right to believe and profess whatever religious doctrine one desires, but also a religious institution's right to decide matters of faith, doctrine, and church governance." Petruska v. Gannon Univ., 462 F.3d 294, 306 (3d Cir. 2006) (internal citations omitted). "To permit civil courts to probe deeply enough into the allocation of power within [a hierarchical] church so as to decide . . . religious law (governing church polity) . . . would violate the First Amendment in much the same manner as civil determination of religious doctrine." Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 709 (1976) (citing Md. & Va. Churches v. Sharpsburg Church, 396 U.S. 367, 369 (1970) (Brennan, J., concurring)).

"Even when rival church factions seek resolution of a church property dispute in the civil courts, there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." Serbian E. Orthodox Diocese, 426 U.S. at 709. Because of this danger, "the First Amendment severely

9

circumscribes the role that civil courts may play in resolving church property disputes." Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449 (1969).[6]

Pennsylvania courts recognize the "long-standing common law precept known as the deference rule, according to which civil courts decline to exercise jurisdiction over cases that would require them to decide ecclesiastical questions . . . ." Connor v. Archdiocese of Philadelphia, 975 A.2d 1084, 1085 (2009). The deference rule provides that "whenever the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body." Id. at 1095 (quotations and citations omitted).

The claim brought here, at its core, is a dispute between two factions of the same church over the control of the church and over its assets. In September 1992, Respondent Kenneth Shelton was elected General Overseer of the Trustees of the General Assembly and has maintained control over the church since that time. (Doc. No. 13-9 at 3.) In this case, Respondent appears in his capacity as de facto President of the Trustees of the General Assembly.[7] (Doc. No. 1 at 2.) Petitioner Patterson is a General Overseer of the Minority Faction of the Trustees of the General Assembly. (Doc. No. 13-5 at 3.) Thus, resolution of the religious dispute at issue in this case would affect the control of church property, in addition to

---

[6] "It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." Presbyterian Church, 393 U.S. at 449. Though Petitioner is not explicitly seeking a disposition of church property, the outcome of this case directly affects church governance and control of church assets.

[7] As noted, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. is the corporation that manages the Church's assets.

10

determining its structure and administration, such as how officials are elected. Serbian E. Orthodox Diocese, 426 U.S. at 709.

In sum, Petitioner seeks to have this Court adjudicate a church controversy by confirming an Arbitration Award, albeit one that was vacated, which would require extensive inquiry into church matters. A solution to the parties' problems involves more than mere application of neutral principles of law. It involves a deeper look into the church's control over its leaders, how they acquire and maintain authority, and how the church is being managed. See id. Probing deeper into these matters would do exactly what the law prohibits courts from doing: becoming entangled in church issues. Id.

This decision is bolstered by the similar disposition of this case by other courts. Judge Brody previously dismissed the case for lack of subject matter jurisdiction, and the Third Circuit affirmed the dismissal. Likewise, the state court dismissed the case for lack of subject matter jurisdiction. Patterson v. Shelton, No. 2147 C.D. 2014, 2015 WL 9260536, at *8-9 (Pa. Commw. Ct. Dec. 18, 2015), appeal denied 138 A.3d 7 (Pa. 2016), petition for cert. denied 137 S.Ct. 297 (2016). Moreover, the state court found that the deference rule warranted dismissal because "the trial court could not adjudicate the issues in this case by applying neutral principles of law." Id. at *9. As a consequence, the First Amendment of the United States Constitution prohibits this Court from hearing this case.[8]

---

[8] Petitioner argues that "if the Pennsylvania courts lack subject matter jurisdiction now, then they have always lacked it." (Doc. No. 31 at 5.) He argues unconvincingly that if this is the case, the last decision issued with proper subject matter jurisdiction was the decision of the Court of Common Pleas that entered judgment confirming the Arbitration Award in favor of Petitioner. (Id.) In short, Petitioner argues the confirmation of the Arbitration Award should stand. This Court need not address the merits of the state court decision or whether the state court had jurisdiction to hear Petitioner's claims.

### C. There Is No Arbitration Award to Enforce

Moreover, it appears definitively from the records in state and federal court that the arbitration award entered in favor of Petitioner by Judge Naythons has been vacated. Both parties have conceded that the Commonwealth Court ordered the arbitration award be vacated. (Doc. No. 1 at ¶ 18; Doc. No. 13-2 at 4.) Thus, Respondents correctly point out that "even if this Court had jurisdiction over the instant Petition . . . the Petition still could never succeed because the underlying Arbitration Adjudications were vacated . . . and therefore those Arbitration Adjudications are a nullity." (Doc. No. 13-2 at 5-6.) Here, there is no arbitration award for this Court to confirm or enforce, and this Court has no jurisdiction under the FAA to enforce a vacated arbitration award. This is another reason that this action will be dismissed.

### D. Lack of Diversity of Citizenship Jurisdiction

Finally, it appears that there is no diversity of citizenship jurisdiction in this case. Judge Brody found that there was none, and the Third Circuit agreed. Based on the allegations in the Petition, it appears that there are parties on both sides of the case that are citizens of Pennsylvania.

Petitioner relies on diversity of citizenship jurisdiction in order to file this case in federal court. (Doc. No. 1 at ¶ 11.) In the Motion to Dismiss, Respondents argue that there is no independent basis for federal jurisdiction under the FAA, and that the requirements of diversity of citizenship jurisdiction are not met here. (Doc. No. 13-2 at 6.)

First, the Federal Arbitration Act does not create independent federal question jurisdiction. The Supreme Court of the United States has held that the FAA does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331, but that an independent basis for jurisdiction, such as diversity of citizenship jurisdiction, must exist in the underlying dispute

before the provisions of the FAA can be applied.  Moses H. Cone v. Mem'l Hosp. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983).

Second, under diversity rules, a federal court can hear a claim if the matter in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship between opposing parties.  28 U.S.C. § 1332.  "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010).

Here, Patterson petitions this Court on behalf of himself and the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith.[9]  Petitioner is a resident of the State of Florida, with an address of 1544 W. 25th Street, Jacksonville, Florida, 32209.  (Doc. No. 1 at 2.) Petitioner has failed to provide an address for the General Assembly of the Church.  The local church, however, has an address of 701 South 22nd Street, Philadelphia, Pennsylvania, 19146. Moreover, many of the members of the General Assembly of the Church, on whose behalf Petitioner is suing, are Pennsylvania residents who attend the Church through the local chapter. Respondents are also Pennsylvania residents.[10]  (Doc. No. 13-2 at 6.)

---

[9] Petitioner did not provide an address for the General Assembly of the Church of Jesus Christ of the Apostolic Faith. According to the Church's website, it is a nationwide congregation with local churches in several states, including Pennsylvania. The address for the local church in Pennsylvania is: 701 South 22nd Street, Philadelphia, Pennsylvania, 19146. See OFFICIAL WEBSITE FOR CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, http://www.tcljc.com/NewSite/index.html (last visited Aug. 11, 2017). (See also (Doc. No. 32 at 13:21-15:3.)

[10] Respondents' addresses are in Pennsylvania are listed in the Petition as follows:

- Kenneth N. Shelton (individually and as defacto President of the Trustees of the General Assembly): 444 Darlington Road, Media, Pennsylvania and 701 South 22nd Street, Philadelphia, Pennsylvania 19146.

Consequently, it appears that there is no complete diversity of citizenship jurisdiction because 1) the General Assembly of the Church, through its local branch, is a citizen of Pennsylvania, and 2) some members of the General Assembly of the Church that Petitioner is suing on behalf of reside in Pennsylvania. Therefore, the Court lacks the necessary subject matter jurisdiction to hear this case based on diversity of citizenship jurisdiction.[11]

## V. CONCLUSION

For reasons stated above, the Court will grant the Respondents' Motion to Dismiss (Doc. No. 13). An appropriate Order follows.

---

- The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with headquarters at 701 South 22nd Street, Philadelphia, Pennsylvania 19146.

- John Carlton Shelton Thomas (trustee): 701 South 22nd Street, Philadelphia, Pennsylvania, 19146.

- Leon Bligen (trustee): 701 South 22nd Street, Philadelphia, Pennsylvania, 19146.

- John L. Brown, Esquire (trustee): 701 South 22nd Street, Philadelphia, Pennsylvania, 19146.

- Anthony Lamb (trustee): 701 South 22nd Street, Philadelphia, Pennsylvania, 19146.

- James Brown (trustee): 701 South 22nd Street, Philadelphia, Pennsylvania, 19146.

(Doc. No. 1 at 2-3.) Petitioner used the same address for each trustee Respondent, which is also the address of the local chapter of the General Assembly of the Church. Respondents are also members of the General Assembly of the Church.

[11] Respondents argue that the Petition should be dismissed based on the doctrines of res judicata and collateral estoppel. (Doc. No. 13 at 11-13). They also argue that the Petition is barred under the Colorado River and Rooker-Feldman federal abstention doctrines. (Id. at 13-19.) See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In view of the several reasons that warrant dismissal of the Petition as discussed in this Opinion, there is no need for the Court to address res judicata, collateral estoppel, or federal abstention